UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN LIPSCOMB,<br><br>   Petitioner,<br><br>  v.<br><br>TIM VIRGA,<br><br>   Respondent. | Case No. 13-cv-05744-JD<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**<br><br>Re: Dkt. No. 24 |

Kevin Lipscomb, a pro se state prisoner, has brought a habeas petition pursuant to 28 U.S.C. § 2254. The Court ordered respondent to show cause why the writ should not be granted. Respondent filed an answer and a memorandum of points and authorities in support of it. Petitioner filed a traverse. The petition is denied.

## BACKGROUND

Petitioner was found guilty of evading a police officer with willful and wanton disregard for the safety of persons and property, possession of a firearm by a felon, discharging a firearm from a motor vehicle, and assault with a semiautomatic firearm. Clerk's Transcript ("CT") at 339-42. The trial court also found true the enhancement allegations for prior felony convictions, prior serious felony convictions, and prior prison terms. *Id.* at 198-99, 486. Lipscomb was sentenced to 67 years to life in prison. *Id.* at 517.

The California Court of Appeal ordered the restitution fine reduced to $10,000, but affirmed the judgment in all other respects. *People v. Lipscomb*, No. A128549, 2012 WL 2519057, at *1 (Cal. Ct. App. June 29, 2012). The California Supreme Court denied review on September 12, 2012. Answer, Ex. 9. Lipscomb has since filed several state habeas petitions, all of which were denied. Answer, Exs. 10-14.

# STATEMENT OF THE FACTS

The California Court of Appeal summarized the relevant facts of the underlying crime as follows:

### The Shooting

On June 4, 2007, at approximately 11:55 a.m., Kenneth Lee parked his car on Townsend Street in San Francisco, got out, and walked to a nearby crosswalk where he waited for the pedestrian crossing light to turn green. As he stood there, a silver Dodge Charger driven by defendant pulled up into the crosswalk. Defendant made eye contact with Mr. Lee and kept looking over at him. Because Mr. Lee thought perhaps he knew the driver or that he was lost and wanted directions, he bent down to peer in through the open passenger side window and asked, "Can I help you?" Defendant, whom Mr. Lee did not recognize, looked at him with a smirk on his face and reached out as if he were going to hand him something. Instead, defendant shot him two to three times. Mr. Lee, who suffered gunshot wounds to his left forearm and both groins, collapsed onto the sidewalk. Defendant drove away.

San Francisco police officer Richard Lee was in a nearby store on Townsend Street when he heard two gunshots. He immediately ran outside and saw Mr. Lee on the ground. As he ran towards him, Officer Lee saw some bystanders pointing down Third Street. He looked in the direction they were pointing and saw the back of a silver car that looked like a Dodge Charger. As he was running, he radioed to police dispatch that there had been a shooting and that the suspect was in a silver car that was heading down Townsend Street past Third Street. He then turned his attention to Mr. Lee. Over the radio, he heard other officers reporting that they had the silver car in their view.

### The Police Chase

Officer Anthony Holder and recruit Officer Christine Hayes had just initiated a traffic stop on New Montgomery Street near Mission Street when they heard a radio broadcast of shots fired near Third and Townsend Streets, with the suspect in a gray or silver car heading towards the freeway. Anticipating that the driver might attempt to get on the Bay Bridge, they got in their patrol car and drove to the area of Bryant and Second Streets. As they were stopped at a red light, Officer Holder spotted a gray Dodge Charger being driven by defendant heading towards them. The officer made a U-turn and pulled up behind the car. When he did so, defendant suddenly accelerated and sped off. Officers Holder and Hayes took off in pursuit and were soon joined by San Francisco Police Officer Gary Peachey and others.

After leading the police on a high-speed chase through the city streets—reaching speeds of 80 miles per hour at one point, as well as hitting a car that was stopped in traffic—defendant eventually became unable to maneuver through traffic, so abandoned his car at

Mission Street and New Montgomery and fled on foot. Officers Holder and Hayes followed him, with Officer Peachey right behind. They chased him into an alley before briefly losing sight of him. Officer Peachey noticed a construction worker pointing to the door of an abandoned building, so he went inside. Searching the building, he found defendant in a bathroom, breathing hard and with his shirt stripped off. Defendant was taken into custody without further incident.

Meanwhile, other officers who had been involved in the pursuit had secured defendant's abandoned car, which bore the license plate "5RLG375." Inside, they found a .40-caliber, semi-automatic handgun lying on the front passenger seat. The hammer of the gun was cocked, which typically indicates that the gun has recently been fired. They also found three bullet casings, an unfired .40-caliber bullet, and a wallet containing defendant's driver's license. Defendant's fingerprint was found on the gun, as well as on other objects in the car, and the driver's side headliner and a glove in the car tested positive for gunshot residue. A bullet jacket found at the scene of the shooting had been fired from the gun found in defendant's car.

**Witnesses to the Shooting**

There were numerous witnesses to the incident. Lindell Wilson was walking down Townsend Street when he heard a "pop." He looked up in the direction of the noise, heard another "pop," and then saw Mr. Lee drop to the ground about 125 yards away. A silver car—the only car that Mr. Wilson remembered seeing in the vicinity—then drove past him down Townsend. Mr. Wilson was on the driver's side of the car, and through the open driver's side window, saw defendant behind the wheel. The car stopped at the next intersection because the light was red, which gave Mr. Wilson enough time to note the license plate number—5RLG375—and write it down. He then gave the number to the police who responded to the scene.

Kerry Atkinson was also walking on Townsend Street, getting ready to have lunch with his wife and a coworker. As he was standing on the street corner, a silver car stopped in the crosswalk across the street from him. The windows were down on both sides of the car, and through the open window he could see the silhouette of a stocky, black man in the driver's seat. He saw Mr. Lee bend down to the car window and have an exchange with the driver. He heard two shots come from the car and saw Mr. Lee fall to the ground. The car then drove off down Townsend Street. Mr. Atkinson ran over to help Mr. Lee, and when Officer Lee arrived, he provided a description of the car and the direction in which it was heading. Mr. Atkinson was later taken to New Montgomery and Mission Streets and shown defendant's car, which he identified as the car he saw leave the scene of the shooting. He was unable to positively identify defendant as the driver, but he said that defendant was "very similar" to the shooter.

William Sherman was at an automobile window repair shop on Townsend Street. He had just walked out of the shop and headed left onto Townsend towards Third Street when he heard two

3

gunshots. Looking across the street from where the sound had come, he saw a grey or silver car stopped in or near a crosswalk and Mr. Lee lying on the street. The car then pulled away slowly, stopped at a red light at Third and Townsend, and turned toward Second Street. Because he suspected that the car had been involved in some kind of incident, Mr. Sherman tried to note the license plate but was only able to get the numbers and not the letters. He gave the partial plate— 5___375—to Officer Lee. He was later taken to another location, where he identified defendant's car as the car he saw on Townsend Street.

A nearby security camera captured an image of a car resembling defendant's on Townsend Street at the time of the shooting.

**Mr. Lee's Identification of Defendant**

Mr. Lee suffered serious injuries and was taken to San Francisco General Hospital, where he would undergo surgery. Before he was taken into surgery, however, the police brought defendant to the hospital for possible identification. Mr. Lee, who had been given "a lot" of pain medication, could not say "100 percent" that defendant was the assailant, although he noted that they shared some similarities, such as the roundness of the face, build, age, and mustache.

At a preliminary hearing in 2008, however, Mr. Lee positively identified defendant as the shooter. And he reiterated his positive identification at trial, explaining he had no doubts because "I'll never forget those eyes." At trial, Mr. Lee explained why he had been unable to make a positive identification in the hospital but could do so at the preliminary hearing: "Well, I was of clear mind. And the circumstances which I—at the hospital, I couldn't in my heart, because I really wasn't 100 percent coherent, having just been shot, pumped full of medication, being pressured to go into surgery and having all the inspectors trying to get a statement from me and make an identification, I just didn't think it was fair to—I couldn't do it."

On cross-examination, Mr. Lee acknowledged that on the day of the preliminary hearing, while he was waiting outside the courtroom, one of the officers involved in the case put a file down on the bench next to him, and he saw defendant's picture on the file. Mr. Lee told the officer, "That's the guy who shot me." The officer responded, "You didn't see this."

**Defendant's Confession**

San Francisco police inspectors Mike Morley and Rich Danielly interviewed defendant shortly after his arrest. When asked if he would like to talk about what happened that day, defendant responded that he was "just tripping," that he "[j]ust was upset," "frustrated," and depressed because he was broke and could not get a better job. He then explained that he drove his wife's car from Vallejo, and as he was driving down a street in San Francisco, he saw an Asian man walking. He stopped his car and said, "Excuse me." When the man looked over, he fired two to three times through the open passenger window with a .40–caliber gun that he

4

> had bought off the street. This was, according to defendant, the first time he had ever shot someone randomly. He claimed he was not trying to hurt anybody and that he felt bad afterwards. He also claimed that he did not realize that he shot the man. He had seen Mr. Lee at the hospital, and denied that he was the man at whom he had fired his gun. When asked what happened after he fired the gun, defendant admitted leading the police on a high-speed chase.

*Lipscomb*, 2012 WL 2519057, at *1-3 (footnote omitted).

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence

presented in the state-court proceeding." *See Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).  Moreover, in conducting its analysis, the federal court must presume the correctness of the state court's factual findings, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

The state court decision to which § 2254(d) applies is the "last reasoned decision" of the state court.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005).  When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion.  *See Nunnemaker* at 801-06; *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).

## DISCUSSION

As grounds for federal habeas relief, Lipscomb asserts that: (1) counsel was ineffective for failing to challenge the victim's identification and the trial court erred by admitting this suggestive identification; and (2) the trial court erred by failing to hold a competency hearing and counsel was ineffective for failing to request a competency hearing and not moving to suppress his statement to police.

### I. IDENTIFICATION EVIDENCE

Lipscomb argues that counsel was ineffective for failing to challenge the victim's identification and that the trial court improperly admitted the evidence.

**Legal Standard**

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.  *Id*.

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things.  First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms.  *Strickland*, 466 U.S. at 687-88.  Second, he must establish that he was prejudiced by counsel's

deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

"A conviction which rests on a mistaken identification is a gross miscarriage of justice." *Stovall v. Denno*, 388 U.S. 293, 297 (1967). Thus, the Constitution "protects a defendant against a conviction based on evidence of questionable reliability, not by prohibiting introduction of the evidence, but by affording the defendant means to persuade the jury that the evidence should be discounted as unworthy of credit." *Perry v. New Hampshire*, 132 S. Ct. 716, 723 (2012) (citing rights to counsel, compulsory process, confrontation, cross-examination, as examples).

Due process requires suppression of eyewitness identification evidence "when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Id*. at 718; *see Manson v. Brathwaite*, 432 U.S. 98, 107-09 (1977); *Neil v. Biggers*, 409 U.S. 188, 196-98 (1972). The purpose of this rule is "to deter police from rigging identification procedures." *Perry*, 132 S. Ct. at 721.

**Discussion**

The California Court of Appeal denied the claim that counsel was ineffective:

> Defendant challenges the validity of his conviction on that ground that Mr. Lee's identification of him as the shooter was procured in an unduly suggestive manner, specifically, that it was improperly influenced by the police officer who let him see—unintentionally or otherwise—defendant's mugshot while he was waiting to testify at defendant's preliminary hearing. Defendant contends that his counsel should have moved to strike Mr. Lee's identification of him, and that the failure to do so amounted to ineffective assistance of counsel. Further, he claims that admission of Mr. Lee's testimony at trial violated his right to due process. We need not decide whether Mr. Lee's identification was improperly influenced, however, because in order to prevail on his claims, defendant must also demonstrate that he was prejudiced by the alleged error. This, he cannot do.
>
> . . .
>
> Multiple eyewitnesses identified defendant's car as the car involved in the shooting. Lindell Wilson saw a silver car driving away from the scene of the shooting. He wrote down the license plate number, which matched that of the car defendant was driving during the police chase. Mr. Wilson also identified defendant as the driver of

7

> the car. Kerry Atkinson saw a silver car leaving the scene, and when later shown defendant's car, identified it as the car he saw leaving the shooting. William Sherman saw a silver or gray car leaving the scene and noted the numbers of the license plate, numbers that matched those on defendant's plate. He later identified defendant's abandoned car as the car he saw leaving the shooting. Officer Lee, who was in a nearby store when the shooting occurred, saw witnesses pointing to a car that was leaving the scene, a car he identified as a Dodge Charger, which was the make and model of defendant's car. Finally, a closed-circuit television in the vicinity of the shooting recorded a Dodge Charger at the scene at the time of the shooting.
>
> A car matching the description of that involved in the shooting was spotted by numerous San Francisco police officers within moments of the shooting, and defendant was driving that car. Officers Holder and Hayes, who led the pursuit, saw defendant exit the Dodge Charger and continue running on foot. Officer Peachey chased defendant from the car to the abandoned building where he was ultimately arrested.
>
> Further, the forensic evidence tied defendant to the shooting. A gun bearing defendant's fingerprint was found in his car, and gunshot residue was detected on the car's headliner and a glove found in the car. A bullet casing retrieved from the scene of the shooting had been fired from the gun in defendant's car.
>
> Finally, defendant admitted to Inspectors Morley and Danielly that he fired his gun at an Asian man walking down the street in San Francisco.
>
> In light of this evidence, there can be no question but that the outcome of the trial would have been the same even without Mr. Lee's identification. As defendant cannot establish that but for his counsel's failure to move to strike Mr. Lee's identification, there was a reasonable probability that the outcome would have been different, his ineffective assistance of counsel claim fails.

*Lipscomb*, 2012 WL 2519057, at *4-5.

The California Court of Appeal reasonably applied *Strickland* in ruling that Lipscomb was not prejudiced by counsel's failure to object to the identification evidence. It is clear an objection to the identification would not have produced a different result. Even without Mr. Lee's identification, there was a wealth of other evidence that could have easily led to his conviction. The state court noted the other eyewitnesses, the confession, and the physical evidence implicating Lipscomb. To be entitled to habeas relief, Lipscomb must have made it clear that the likelihood of a different result in his trial is not just "conceivable," but "substantial." *Harrington v. Richter*, 562 U.S. 86, 112 (2001). The likelihood of a different result without Mr. Lee's identification is

8

1  not even conceivable, let alone substantial.  Accordingly, Lipscomb is not entitled to habeas relief
2  on this claim.
3        The California Court of Appeal also found that the trial court did not err in admitting the
4  identification evidence:

> The absence of prejudice similarly defeats defendant's claim that he was deprived of due process.  (*See Chapman v. California* (1967) 386 U.S. 18, 24 [where defendant was deprived of a federal constitutional right, no reversal where error was harmless beyond a reasonable doubt].)  In light of the overwhelming evidence of defendant's guilt, as detailed above, there can be no doubt that any claimed error in the admission of Mr. Lee's identification was harmless.
>
> Defendant impliedly concedes the correctness of this conclusion.  In his opening brief, he argues that Mr. Lee's identification of defendant was the result of an unduly suggestive identification process, and that without it, the prosecution would have had "a difficult time establishing beyond a reasonable doubt that [defendant] was the man who shot Lee."  In response, the People detail the extensive evidence, aside from Mr. Lee's identification, establishing that defendant was the shooter, and argue that in light of the evidence, defendant cannot show prejudice.  In reply, defendant completely fails to acknowledge this argument.  Rather, he merely reargues his position that Mr. Lee's identification was unduly influenced and therefore unreliable. He ignores the eyewitness testimony and forensic evidence tying him to the crime, baldly concluding that "Lee's identification of [defendant] at trial was necessarily prejudicial to appellant."  By failing to respond to the People's argument that he was not prejudiced by the admission of Mr. Lee's identification because of the other evidence identifying him as the shooter, defendant has as much as conceded the validity of the argument.

*Lipscomb*, 2012 WL 2519057, at *5.

      The Supreme Court has made it clear that a defendant is not necessarily entitled to exclude unreliable testimony from the record entirely.  So long as the defendant is afforded the "means to persuade the jury that the evidence should be discounted as unworthy of credit," due process has not been violated.  *Perry*, 132 S. Ct. at 723.  Lipscomb was afforded such means to challenge the creditworthiness of Mr. Lee's identification.  The circumstances of the identification were presented to the jury, and on cross-examination and closing argument trial counsel directly called into doubt the reliability of the identification.  Reporter's Transcript ("RT") at 220-23; 1032-36.

Lipscomb was not denied his due process rights when Mr. Lee's identification was admitted because he was given the opportunity to discredit the identification.

Even if pretrial identification procedures violated the Due Process Clause, that error must still be analyzed for harmlessness under the standard set forth in *Brecht v Abrahamson*, 507 U.S. 619, 623 (1993), to determine if the error had a "substantial and injurious effect or influence on the jury's verdict." *See Williams v. Stewart*, 441 F.3d 1030, 1038–39 (9th Cir. 2006) (considering allegedly unconstitutional pretrial identification procedure, and analyzing for harmlessness under *Brecht*); s*ee also Johnson v. Sublett*, 63 F.3d 926, 928–29 (9th Cir. 1995) (prejudice from unreliable identification may be mitigated by cross-examination and other courtroom safeguards); *Simmons v. United States*, 390 U.S. 377, 384 (1968) (danger that photo lineup technique may result in conviction based on misidentification may be lessened by cross-examination at trial).

Even if it were an error to admit the evidence, Lipscomb cannot demonstrate that it had a detrimental effect upon his defense. The California Court of Appeal reasonably applied established constitutional law in denying this claim, and the admission of the identification evidence did not have a substantial and injurious effect upon his defense. As discussed above, the remaining incriminating evidence against Lipscomb was overwhelming. This claim is denied.

## II.      COMPETENCY

Lipscomb next argues that the trial court erred in failing to hold a competency hearing and that counsel was ineffective for failing to raise the issue and not moving to have Lipscomb's statement to the police suppressed.

**Legal Standard**

The test for competence to stand trial is whether the defendant demonstrates the ability "to consult with his lawyer with a reasonable degree of rational understanding" and a "rational as well as factual understanding of the proceedings against him." *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (quoting *Dusky v. United States*, 362 U.S. 402 (1960) (per curiam)); *Douglas v. Woodford*, 316 F.3d 1079, 1094 (9th Cir. 2003). The question "is not whether mental illness substantially affects a *decision*, but whether a mental disease, disorder or defect substantially affects the

10

prisoner's *capacity* to appreciate his options and make a rational choice . . . ." *Dennis v. Budge*, 378 F.3d 880, 890 (9th Cir. 2004).

Due process requires a trial court to order a psychiatric evaluation or conduct a competency hearing sua sponte if the court has a good faith doubt concerning the defendant's competence. *Pate v. Robinson*, 383 U.S. 375, 385 (1966). This responsibility continues throughout trial. *Drope v. Missouri*, 420 U.S. 162, 181 (1975).

A good faith doubt about a defendant's competence arises if "a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." *Maxwell v. Roe*, 606 F.3d 561, 568 (9th Cir. 2010) (quoting *de Kaplany v. Enomoto*, 540 F.2d 975, 983 (9th Cir. 1976) (en banc)); *see*, *e.g.*, *Stanley v. Cullen*, 633 F.3d 852, 860-61 (9th Cir. 2011) (not unreasonable for trial court to conclude there was not enough evidence before it to raise a doubt about defendant's competence to have sua sponte held a hearing where defendant made some questionable choices in strategy and acted oddly but defense counsel specifically informed trial court several times that they had no doubt about defendant's competency to assist them and defendant was coherent in his testimony and colloquies with the court); *Cacoperdo v Demosthenes*, 37 F.3d 504, 510 (9th Cir. 1994) (denial of motion for psychiatric evaluation did not render trial fundamentally unfair where petitioner made single conclusory allegation he suffered from mental illness).

Several factors are relevant to determining whether a hearing is necessary, including evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial. *Drope*, 420 U.S. at 180. "In reviewing whether a state trial judge should have conducted a competency hearing, we may consider only the evidence that was before the trial judge." *McMurtrey v. Ryan*, 539 F.3d 1112, 1119 (9th Cir. 2008). The failure of petitioner or his attorney to request a competency hearing is not a factor in determining whether there is a good faith doubt in the defendant's competency. *Maxwell*, 606 F.3d 574 (trial judge has an "independent duty" to hold competency hearing if there is a good faith doubt).

11

**Discussion**

The claim that the trial court erred by not holding a competency hearing was presented in a state habeas petition to the San Francisco County Superior Court, which was the last court to issue a reasoned decision. The Superior Court denied the claim stating:

> Petitioner alleges in his writ of habeas corpus that he was denied due process because the trial court failed to order a mental competency hearing. Petitioner concedes that neither his counsel nor the court ever raised the issue of his competency, but he argues this is not determinative, especially considering his mental health history.
>
> . . .
>
> Petitioner fails to provide sufficient documentary evidence that he was mentally incompetent at the time of trial. To support his claim, petitioner includes with his writ of habeas corpus his mental health records from San Quentin, High Desert State Prison, and the state prison in Sacramento. The evidence describes, for instance, a past suicide attempt, petitioner's being placed in a safety cell, certain diagnoses such as adjustment disorder with conduct problems and antisocial personality disorder, and behavior while incarcerated. However, all of the evidence provided documents events and diagnoses that occurred after he was convicted of his life crimes. Petitioner provides no evidence that he was suffering from any apparent mental health issues at the time of his trial, which commenced in December 2008 and ended in 2009. Accordingly, none of the records indicate that at the time of his trial he was "unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." (Cal. Pen. Code § 1367(a).)

Ex. 11 at 1-2.

In this case, the state court found that Lipscomb failed to provide sufficient evidence that a competency hearing was necessary or that he was mentally incompetent at trial. "In reviewing whether a state trial judge should have conducted a competency hearing, we may consider only the evidence that was before the trial judge." *McMurtrey*, 539 F.3d at 1119.

Lipscomb presents no evidence to support his assertion that he was incompetent at the time of the trial. The majority of evidence he presents occurred well after his trial and was therefore unknown by the trial court. He identifies no interactions with counsel or the court that should have called his competency into question. The trial began on December 9, 2008, and ended on January 14, 2009. *Lipscomb*, 2012 WL 2519057 at *4; RT at 1083-94. Lipscomb argues that his

12

psychiatric disorder became clearly apparent on March 17, 2010, while in San Francisco County Jail. Answer, Ex. 10 at 126 of 256. The remainder of his evidence consists of prison medical records dated 2010 and later. The only reference to any mental problems prior to 2010 is a note in a prison medical report that Lipscomb had been hospitalized in June 2007 in the jail psychiatric services section. Answer, Ex. at 141 of 256. There is no additional information regarding this incident nor is it alleged that the trial court was aware of it, and Lipscomb presents no arguments how this incident 18 months prior to trial, supports his assertion of incompetency at trial.

Moreover, on December 8, 2008, a day before the trial commenced, Lipscomb testified at a hearing on a motion to suppress his statement. Answer, Ex. 3 at 139, 159-78. The transcripts of the hearing reflect competent testimony, in that he understood the questions being asked and he provided thoughtful answers. *Id.*; *see, e.g., Benson v. Terhune*, 304 F.3d 874, 885-86 (9th Cir. 2002) (testifying in one's own defense is the "quintessential act of participating in one's own trial" and a defendant's "lengthy, logical and cogent trial testimony reflects a sufficient ability to understand the proceedings and to assist in her own defense")

Lipscomb presents no evidence that he was mentally impaired at the time of his trial. His conclusory arguments with no support are insufficient to establish any indicia of incompetence. This claim is denied because he has failed to demonstrate that the state court opinion was an unreasonable determination of the facts or an unreasonable application of Supreme Court authority.

The San Francisco Superior Court also denied the claim that trial counsel was ineffective for failing to request a competency hearing and not moving to suppress the statement to police:

> Here, petitioner provides no facts to support his claim that trial counsel was inattentive to petitioner's mental instability and should have requested a competency hearing. In fact, as discussed above, petitioner does not provide any evidence that he was mentally unstable at the time of his trial. Further, trial counsel's failure to move to suppress petitioner's statements to the police was a tactical decision. Given that the transcript of the police interview that petitioner attached to his writ shows he clearly waived his *Miranda* rights, trial counsel was reasonable in not moving to suppress the statements. The reviewing court should not second guess counsel's decision. After all, it is reasonable for counsel to not move to suppress statements that do not violate a defendant's constitutional rights. If petitioner is arguing these statements should have been

13

> suppressed because of his mental incompetency, petitioner, again has not provided sufficient documentary evidence to support his claim.
>
> Moreover, while petitioner claims that counsel's failure to suppress the statements and failure to request a competency evaluation prejudiced him in general, he has not given any concrete explanation of how he was prejudiced nor has he demonstrated a reasonable probability that the overall result of his trial would have been different had these particular tactical decisions not been made. Thus, petitioner fails to provide sufficient evidence that his trial counsel was ineffective.

Ex. 11 at 5.

Counsel's failure to request a competency hearing violates the Sixth Amendment right to effective assistance of counsel only when "there are sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt the defendant's competency, and there is a reasonable probability that the defendant would have been found incompetent to stand trial had the issue been raised and fully considered." *Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir. 2011) (quoting *Jermyn v. Horn,* 266 F.3d 257, 283 (3d Cir. 2001)).

Lipscomb offers no evidence that he was mentally impaired at the time of his trial that could establish sufficient indicia of incompetence. When evaluating counsel's performance for effective assistance purposes, counsel's performance should be "viewed as of the time of counsel's conduct," and not after the fact. *Strickland*, 466 U.S. at 690. Counsel could not possibly have concluded that Lipscomb was incompetent to stand trial from incidents that took place at times far outside of the trial, or from Lipscomb's statements and conduct during trial. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Strickland*, 466 U.S. at 691.

Lipscomb testified competently at the motion to suppress hearing and also competently addressed the court to make a motion for a new trial and new counsel and to request a hearing regarding the assistance of his second appointed counsel. RT at 1091-93, 1097-99. None of these interactions indicated any reason to doubt Lipscomb's competency. As such, the state court's decision was not unreasonable.

14

Nor was counsel ineffective for failing to move to suppress the statement to police pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).  Counsel did seek to suppress the statement on the grounds that it was obtained as a result of Lipscomb's unlawful arrest and detention and that the statement was involuntary.  CT at 52-63; RT at 55-131, 141-81.  The record also indicates that Lipscomb waived his *Miranda* rights at the beginning of his interview with police.  CT at 272.  Counsel thus made a reasonable tactical decision not to raise a motion citing *Miranda* and instead challenge the statement through other means.  Lipscomb has failed to demonstrate that counsel was ineffective for failing to move to suppress the statement or that he was prejudiced because the motion, had it been made, would most certainly have been denied.  Accordingly, he is not entitled to relief on this claim.

## CONCLUSION

1. The petition for writ of habeas corpus is **DENIED** on the merits.  A certificate of appealability will not issue.  *See* 28 U.S.C. § 2253(c).  This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

2. Petitioner's motion to appoint counsel (Docket No. 24) is **DENIED**.

**IT IS SO ORDERED.**

Dated: October 13, 2015

_____
JAMES DONATO
United States District Judge

15

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN LIPSCOMB,<br><br>        Plaintiff,<br><br>   v.<br><br>TIM VIRGA,<br><br>        Defendant. | Case No. 13-cv-05744-JD<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on October 13, 2015, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Kevin Lipscomb ID: AC5110   C-8-229
California State Prison-Sacramento
P.O. Box 290066
Represa, CA 95671

Dated: October 13, 2015

Susan Y. Soong
Clerk, United States District Court

By: /s/ Lisa R. Clark
LISA R. CLARK, Deputy Clerk to the
Honorable JAMES DONATO

16